| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Anthony O. Egbase (SBN 181721)**<br>**Crystle J. Lindsey (SBN 281944)**<br>**A.O.E. LAW & ASSOCIATES, A.P.C.**<br>**350 S. Figueroa St., Ste. 189**<br>**Los Angeles, CA 90071**<br>**Ph: (213) 620-7070; Fax: (213) 620-1200**<br>**Email:  info@aoelaw.com** | |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for: Debtors and Debtors-in-possession* | |

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION

| In re:<br><br>**Emeterio Rodriguez and Leticia Rodriguez,**<br><br>                                                    **Debtors.** | CASE NO.: **1:17-bk-10881-MT**<br><br>CHAPTER: 11 |
|---|---|
| | **INDIVIDUAL DEBTORS' DISCLOSURE<br>STATEMENT IN SUPPORT OF<br>PLAN OF REORGANIZATION** |
| | DATE:  **01/17/2018**<br>TIME:  **9:30 a.m.**<br>COURTROOM:  **302**<br>PLACE:  **21041 Burbank Blvd., Woodland Hills, CA 91367** |

        Attached is a chapter 11 plan (the Plan) proposed by the above-named individuals (the "Debtors"). The Debtors attest that the information stated in this Disclosure Statement and the Plan is accurate. All creditors should refer to Articles I-IV of the Plan for the specific treatment of their claims. This Disclosure Statement is explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.**

**EFFECTIVE DATE OF THE PLAN:** The Effective Date of the Plan is 14 days following the date of entry of the order confirming the Plan unless a stay of the confirmation order is in effect, in which case the Effective Date will be the first business day after the date on which the stay of the confirmation order has been lifted, provided that the confirmation order has not been vacated.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    *Page 1*                    **F 2081-1.DISCLSR.STMT**

**Part 1**
**Proposed Treatment of Claims**

**A.    Unclassified Claims including administrative priority claim, priority tax claims, and gap claims**

Holders of administrative priority claims are entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code including (i) professional fees and costs; (ii) United States trustee's fees; and (iii) post-petition domestic support obligations. Such claims shall be paid in full on, or as soon as practicable after, the Effective Date or upon allowance of such claim, whichever is later.

**Debtors have an administrative claim owed to their counsel, A.O.E. Law & Associates, in the estimated amount of $12,000.00 for attorney's fees. Debtors shall pay the claim in full on or before the Effective Date of the Plan subject to the Court's approval.**

Holders of priority tax claims are entitled to priority under § 507(a)(8). Such claims shall be paid in full over five years from the date of the entry of the order for relief with ___% interest in equal [monthly/quarterly/annually] amortized payments according to §511 of the Bankruptcy Code. See Article I.C. of the Plan.

Holders of involuntary gap period claims allowed under § 502(f) are entitled to priority under § 507(a)(3). Such claims will be paid in full on, or as soon as is practicable, after the Effective Date. See Article I.D. of the Plan. Involuntary gap priority creditors exist only in cases commenced involuntarily. These are creditors who have claims that arose after the involuntary petition was filed but prior to the court's appointing a trustee or granting an order for relief.

**B.    Secured Creditors** (Classes 2, 3, 4 and 5)

See Article II of the Plan.

**C.    Priority Unsecured Creditors**

The following class(es) of priority unsecured claims are impaired and therefore, entitled to vote under the Plan. Such creditors will be paid [annually/quarterly/monthly] in full over _____ years with _____% interest. Payments shall be equal [monthly/quarterly] amortizing installments beginning on the first day of each calendar ☐ month ☐ quarter after the Effective Date. Alternatively, if any one of these Classes does not vote to accept the Plan, then each claim in such class must be paid in full on, or as soon as practicable after, the Effective Date (except to the extent a holder of a claim in the class agrees to other terms) or the plan cannot be confirmed. See Article II of the Plan.

| | | |
|---|---|---|
| ☐ | Class 1(a): | Domestic support obligation |
| ☐ | Class 1(b): | Priority wage claims |
| ☐ | Class 1(c): | Employee benefit plan contribution claims |
| ☐ | Class 1(d): | Grain producer and fisherman claims |
| ☐ | Class 1(e): | Consumer deposit claims. |

**D.    General Unsecured Creditors (Classes 6(a) and 6(b))**

☐ Class 6(a): A creditor whose allowed claim is $__ or less or who elects to reduce its allowed claim to $ will receive a single payment equal to 100% of its allowed claim on, or as soon as practicable after, the Effective Date of the Plan. See Article II of the Plan.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                           *Page 2*                    **F 2081-1.DISCLSR.STMT**

☒ **Class 6(b):** Other general unsecured creditors will be paid **0.62**% of their allowed claims without interest, in equal quarterly installments over **5** years. Under § 1129(a)(15), if an unsecured creditor objects to confirmation, an individual debtor must either pay the present value of that unsecured claim in full or make distributions under the plan totaling at least the value of the debtor's net disposable income over the greater of (a) five years or (b) the period for which the plan provides payments. However, § 1129(a)(15) should be read and applied in conjunction with § 1123(a)(4) which provides that a chapter 11 plan must provide the same treatment for each claim in the same particular class. See Article II of the Plan.

Undisputed Class 6 claims, as of this date, are listed in **Exhibit C** to the Disclosure Statement.

**E.     Executory Contracts and Unexpired Leases**

**(1)** Executory Contracts and Leases Assumed. On the Effective Date, the Debtor assumes the executory contracts and unexpired leases enumerated in Exhibit E to the Disclosure Statement and shall perform all obligations thereunder, both preconfirmation and postconfirmation.

Any preconfirmation arrearages shall be paid by the Effective Date, unless the parties agree otherwise or the court finds that a proposed payment schedule provides timely cure and adequate assurance of future performance. Postconfirmation obligations will be paid as they come due.

**(2)** Executory Contracts and Leases Rejected. The Debtor is conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in **Exhibit E** to the Disclosure Statement as of the Effective Date. Claims arising from the rejection of an executory contract or unexpired lease under this section are general unsecured claims in Class 6, except to the extent this court orders otherwise. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

**F.     Discharge**

Upon completion of the payments under the Plan, the Debtor may receive a discharge of preconfirmation debts, except such discharge shall not discharge the Debtor from any debts that are found nondischargeable under § 523 or are obligations created by this Plan. The payments promised in the Plan constitute new contractual obligations that replace the preconfirmation debts proposed to be discharged. Creditors may not sue to collect on these obligations so long as the Debtor is not in material default under the Plan. If the Debtor materially defaults in performing the Plan, affected creditors may sue the Debtor to enforce the terms of the Plan or to dismiss this case or to convert it to a case under chapter 7 of the Bankruptcy Code. See Article VI of the Plan.

**Part 2
Voting on Confirmation of Plan**

**A.     Who may vote:** Only impaired creditors are entitled to vote (see § 1124). A creditor is entitled to vote on confirmation of the Plan unless (i) the creditor's class is unimpaired (presumed to accept the Plan) or is to receive no distribution (presumed to reject the Plan); (ii) an objection has been filed to that creditor's claim; (iii) that creditor's claim is scheduled by the Debtor as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim; or (iv) the claim is unclassified (and thus required by law to be paid in full). A creditor whose claim has either been objected to or has been scheduled by Debtor as contingent, disputed, unliquidated or unknown or who has not filed a proof of claim, and who wishes to vote, must move to have its claim allowed for voting purposes by filing a motion for such relief in time for that motion to be heard before the hearing on confirmation of the Plan. A creditor whose claim

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                           *Page 3*                          **F 2081-1.DISCLSR.STMT**

has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in each capacity by delivering one ballot for the secured part of the claim and another ballot for the unsecured portion of the claim.

**B.**    **How to vote:** A voting creditor must fill out and return the attached ballot so that it is received by the Plan proponent no later than _____ at the following address:

> **A.O.E. Law & Associates, A.P.C.**
> **350 S. Figueroa St., Suite 189**
> **Los Angeles, CA 90071**

**C.**    **Effect of vote:** The Plan will be confirmed only if (i) it is accepted by each impaired class, or (ii) it is accepted by at least one impaired class exclusive of insiders (as defined by §101(31)) and the court determines that the Plan is "fair and equitable" (as defined by §1129(b)) to all rejecting classes of creditors, and it meets all of the other criteria required for confirmation. A class of creditors accepts the Plan if it is accepted by a majority in number and at least two-thirds in dollar amount of the creditors in that class timely voting.

**Part 3**
**Source(s) of Payments under the Plan**

The Debtors intend to make the payments required under the Plan from the following sources:

**A.**    ☒ **Available Cash**. Debtor projects $**16,044.71** cash will be available on the Effective Date.

**B.**    ☐ **Sale of Assets**. A sale of property described in the Plan, which the Debtor estimates will produce $____.

**C.**    ☒ **Future disposable income**. Debtor estimates that projected monthly disposable income available to creditors for the **5** year[1] period following confirmation will be $**15**[2]. This is based on the monthly income of $**6,777** and expenses of $**6,762** as set forth in Debtor's Declarations of Current/Post-petition Income and Expenses (LBR Form F 3015-1.20.DEC.INCOME.EXPENSE), which have been prepared as of **12/04/2017**[3] and are attached hereto as **Exhibit A**.

☒ This projection is consistent with (i) Debtors' average monthly income for the six months prior to this case of $**6,777**, as set forth in Debtor's Statement of Current Monthly Income (Official Bankruptcy Form 22B) filed with this court and (ii) average monthly income of $**6,777** and average monthly expenses (excluding professional expenses and fees incurred in this bankruptcy case) of $**4,724** during the last 6 months and such differences as are explained as follows (**See Exhibit F**):

Debtors projected expenses are higher than their historical expenses because Debtors were not making any mortgage payments to Nationstar Mortgage LLC.  Debtors' first payment to Nationstar Mortgage LLC came due on November 1, 2017.

Upon written request, Debtor will provide copies of the Statement of Current Monthly Income and/or monthly operating statements.

---

[1] This number should match the number of years selected for payments made to creditors under the plan. See note 11 of the Plan as to the Absolute Priority Rule and modify this paragraph accordingly.
[2] Under § 1123(a)(8), the plan of an individual debtor shall "provide for payment to creditors . . . of all or such portion" of postpetition personal services income "as is necessary for execution of the plan."
[3] LBR Form F 3015-1.20 should be updated to the date of the most recent financial information available for the debtor.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                  *Page 4*                          **F 2081-1.DISCLSR.STMT**

**D.**    ☐ **Other sources of funding** are explained as follows:

**Risk Factors**

The proposed Plan has the following risks: (explain, e.g., sale falls through, Debtor loses employment/business, illness):

Vacancy of Debtors' rental property and loss of rental income is a possible risk to Debtors' Plan.  Debtors do not anticipate any rental vacancies.  Additionally, loss of employment for both Debtors is also a possible risk to the Plan.

## Part 4
### Liquidation Analysis

The Debtors' Schedules A and B, that may have been amended for the purposes of this Disclosure Statement, are attached hereto as Exhibit B. The Debtors have calculated the liquidation value of each asset as shown below. The Debtor arrived at the net liquidation values that are subject to liens by deducting from the value of the assets the amount of the secured liens and any applicable sales costs, fees, and taxes.

| | | |
|---|---|---|
| Net liquidation value of Debtors' assets | | $ 0.00 |
| Less estimated chapter 7 trustee expenses | - | $ 0.00 |
| Less administrative claims and priority tax claims (see Article I of Plan) | - | $ 12,000 |
| Less Other Priority Claims (see Article II of Plan) | - | $ 0.00 |
| Liquidation value available to general unsecured creditors | | $ 0.00 |
| Divide by estimated amount of allowed general unsecured claims (see Article II, Class 6 of Plan; Exhibit C) | | $ 144,271 |
| Equals estimated percentage of their allowed claims that general unsecured creditors would receive in a liquidation of the Debtor | | 0.00 % |
| **Estimated percentage of claims general unsecured creditors would receive under Debtor's proposed Plan** | | **0.62** % |

## Part 5
### Feasibility

The Plan cannot be confirmed unless the court finds it feasible. A Plan is feasible if confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor, unless such liquidation or reorganization is proposed in the Plan.

<u>Feasibility by the Effective Date.</u> The Debtor estimates that the Debtor will have sufficient cash on hand on the Effective Date to pay all claims and expenses entitled to be paid in cash on such date, as shown below.

| | | |
|---|---|---|
| Cash Debtor will have on hand by Effective Date: | | $16,000 |
| **Less:** | | |
| Administrative claims: | - | $12,000 |
| Statutory costs and charges: | - | $325 |
| Other Plan payments payable on Effective Date: | - | $60 |
| Balance after paying these amounts: | | $3,615 |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                            *Page 5*                            **F 2081-1.DISCLSR.STMT**

The sources of cash the Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| Cash on Hand | **$16,000.00** |
| Sale of assets | $_____ |
| Additional cash the Debtor will accumulate from projected disposable income between now and Effective Date | + $_____ |
| Contribution | + $_____ |
| Other:_____ | + $_____ |
| **Total** | **$16,000.00** |

Feasibility over the life of the Plan. The Debtor has, and projects that the Debtor will receive, enough cash over the life of the Plan to make the required Plan payments based on the sources described above. See **Exhibit A** attached hereto.

Date: **12/05/2017**

**Emeterio Rodriguez and Leticia Rodriguez**
Printed name of Debtors

Date: **12/05/2017**                    **/s/ Crystle J. Lindsey**
Signature of attorney for Debtor, if any

**Crystle J. Lindsey**
Printed name of attorney for Debtor, if any

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**12/05/2017**                    _Emeterio Rodriguez_
Emeterio Rodriguez

**12/05/2017**                    _Leticia Rodriguez_
Leticia Rodriguez

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2012_                    Page 6                    **F 2081-1.DISCLSR.STMT**

**List of Exhibits**

| | |
|---|---|
| Exhibit A: | Declarations of current/postpetition income and expenses, prepared as of **12/05/2017**. List of expenses shall include a list of proposed plan payments |
| Exhibit B: | Schedules A and B, as adjusted to provide liquidation values and with appendices describing valuation methods |
| Appendix I: | Kelly Bluebook Value re 2014 Mini Cooper |
| Appendix II: | Kelly Bluebook Value re 2005 Lincoln Navigator |
| Exhibit C: | General unsecured claims (indicate next to each creditor whether or not claims are disputed) (Class 6) |
| Exhibit D: | Ballot |
| Exhibit E: | Executory contracts and unexpired leases to be assumed |
| Exhibit F: | Debtors' Historical Income and Expenses for Last 6 Months |
| Exhibit G: | Debtors' Monthly and Yearly Projections |
| Exhibit H: | Stipulation between Debtors and Secured Creditor Nationstar Mortgage LLC re Plan Treatment of Real Property |
| Exhibit I: | Stipulation between Debtors and Secured Creditor BMW Financial Services, NA LLC re Plan Treatment of 2014 Mini Cooper |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                  *Page 7*                                  **F 2081-1.DISCLSR.STMT**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**A.O.E. LAW & ASSOCIATES**
**350 S. Figueroa Street, Suite 189**
**Los Angeles, CA 90071**

A true and correct copy of the foregoing document entitled (*specify*):   **Individual Debtors' Disclosure Statement in Support of Plan of Reorganization and Supporting Exhibits**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **12/06/2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Anthony Obehi Egbase on behalf of Debtors in possession:  info@aoelaw.com**
**Clarissa D. Cu on behalf of Debtors in possession:  clarissa@aoelaw.com**
**Crystle J. Lindsey on behalf of Debtors in possession:  crystle@aoelaw.com**
**Edith Walters on behalf of Debtors in possession:  ediewaltecf@gmail.com**
**Todd S. Garan on behalf of Nationstar Mortgage LLC:  ch11ecf@aldridgepite.com**
**Bret D. Allen on behalf of BMW Bank of North America:  bankruptcy@bretallen.com**
**Katherine Bunker on behalf of Office of the United States Trustee (SF):  kate.bunker@usdoj.gov**
**Greg P. Campbell on behalf of Courtesy NEF:  ch11ecf@aldridgepite.com**
**Aimee S. Cobb on behalf of Nissan - Infiniti LT:  bkpoc@nmac.com**
**Zann R. Welch on behalf of BMW Financial Services NA, LLC:  ecfnotices@ascensioncapitalgroup.com**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **12/06/2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy**
**Chambers of the Honorable Maureen Tighe**
**21041 Burbank Blvd., Ste. 324**
**Woodland Hills, CA 91367**

**Securities & Exchange Commission**
**Attn: Bankruptcy Counsel**
**444 Flower St., Ste. 900**
**Los Angeles, CA 9071**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **11/15/2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 12/06/2017 | Sandy Segovia | /s/ Sandy Segovia |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                          *Page 8*                            **F 2081-1.DISCLSR.STMT**

Label Matrix for local noticing
0973-1
Case 1:17-bk-10881-MT
Central District of California
San Fernando Valley
Wed Dec  6 19:12:45 PST 2017

BMW Financial Services NA, LLC
c/o Ascension Capital Group
P.O. Box 165028
Irving, TX 75016-5028

Nissan - Infiniti LT
PO Box 660366
Dallas, TX 75266-0366

San Fernando Valley Division
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

(p)BMW FINANCIAL SERVICES
CUSTOMER SERVICE CENTER
PO BOX 3608
DUBLIN OH 43016-0306

Citibank/Best Buy
Centalized Bankruptcy/Citicorp Credit Se
Po Box 790040
Sanit Louis, MO 63179-0040

Comenity Bank/Dress Barn
Po Box 182125
Columbus, OH 43218-2125

Dept Of Ed/Nelnet
Attn: Claims
Po Box 82505
Lincoln, NE 68501-2505

Designed Receivable Solutions, Inc. /DRS
1 Centerpointe Drive, Suite 450
La Palma, CA 90623-1089

Nationstar Mortgage LLC
8950 Cypress Waters Blvd
Coppell, TX 75019-4620

(p)NATIONSTAR MORTGAGE LLC
PO BOX 619096
DALLAS TX 75261-9096

Nissan
POB 660366
Dallas, TX  75266-0366

Nissan Motor Acceptance Corp/Infinity Lt
Nmac/Attn: Bankruptcy
Po Box 660360
Dallas, TX 75266-0360

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Quantum3 Group LLC as agent for
MOMA Funding LLC
PO Box 788
Kirkland, WA  98083-0788

Synchrony Bank/Lowes
Po Box 965064
Orlando, FL 32896-5064

(p)TOYOTA MOTOR CREDIT CORPORATION
PO BOX 8026
CEDAR RAPIDS IA 52408-8026

Toyota Motor Credit Corporation
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

US Department of Education c/o Nelnet
121 South 13th Street, Suite 201
Lincoln, NE 68508-1911

United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Visa Dept Store National Bank
Attn: Bankruptcy
Po Box 8053
Mason, OH 45040-8053

Anthony Obehi Egbase
A.O.E Law & Associates, APC
350 S Figueroa St Ste 189
Los Angeles, CA 90071-1117

Clarissa D Cu
A.O.E. Law & Associates APC
350 S. Figueroa St., Ste. 189
Los Angeles, CA 90071-1117

Crystle J Lindsey
AOE Law & Associates
350 S Figueroa St Ste 189
Los Angeles, CA 90071-1117

Edith Walters
925 N Curson Ave. no. 6
West Hollywood, CA 90046-6525

Emeterio Rodriguez
PO Box 18076
Los Angeles, CA 90018-0628

Leticia Rodriguez
PO Box 18076
Los Angeles, CA 90018-0628

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

BMW Financial Services NA, LLC
P.O. Box 3608
Dublin OH 43016, OH  43016

(d)BMW Financial Services
Attn: Bankruptcy Department
Po Box 3608
Dublin, OH 43016

Nationstar Mortgage LLC
PO Box 619096
Dallas TX 75261-9741

Portfolio Recovery Associates, LLC
c/o Best Buy Credit Card
POB 41067
Norfolk VA 23541

Toyota Motor Credit Co
Po Box 8026
Cedar Rapids, IA 52408

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)AOE Law & Associates

(u)BMW BANK OF NORTH AMERICA

(u)Courtesy NEF

(u)Nationstar Mortgage LLC

End of Label Matrix
Mailable recipients    26
Bypassed recipients     4
Total                  30

## **DECLARATION OF EMETERIO RODRIGUEZ AND LETICIA RODRIGUEZ IN SUPPORT OF DISCLOSURE STATEMENT**

We, Emeterio Rodriguez and Leticia Rodriguez, do hereby declare that all of the following is true and correct to the best of our knowledge, and if called upon as a witness, we could and would competently testify to the truthfulness of all the below statements:

1. We are the debtors and debtors-in-possession (the "Debtors") in the above-captioned Chapter 11 bankruptcy proceeding (Case No. 1:17-bk-10881-MT) and we make this declaration in support of our Disclosure Statement describing our Proposed Chapter 11 Plan of Reorganization (the "Disclosure Statement" and "Plan").

2. We filed the instant case in order to protect our rental property located at 16585 Montgomery Court, Fontana, California 92336 ("Subject Property"). We are co-owners of the Subject Property and are listed as borrowers to the first deed of trust held by Nationstar Mortgage LLC ("Nationstar").

3. Our financial problems began when we were defrauded by a debt relief agent who collected our monthly mortgage payments, but was not paying them to our lender Nationstar.  Additionally, our financial problems worsened when I, Mr. Rodriguez, started earning less income due to decreased hours at work.

4. Based on our historical income and expenses for the last six months, our projected income is the amount of $6,590 and our projected expenses are in the amount of $6,575.

5. Our Plan provides a dividend of 0.6% to unsecured general claims, which is based on our projected monthly disposable income of $15 per month.

6. We have reviewed the information and statements contained in the Disclosure Statement and Plan and its contents are true and correct to the best of our knowledge. Additionally, no information has been omitted or altered that would affect creditors' approval of our Disclosure Statement.

7. My counsel prepared the exhibits in support of our Disclosure Statement and Plan, and the supporting exhibits are true and correct to the best of our knowledge.

8. Our Plan has been proposed in good faith and is consistent with the objectives of the United States Bankruptcy Code.

9. We have drastically cut our personal and operating expenses and have steadily increased our cash flow in order to propose a confirmable Plan that maximizes the return to the creditors of our estate.

We declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on this 5th day of December 2017 in San Fernando, California.

Emeterio Rodriguez

Leticia Rodriguez

Declaration in Support of Disclosure Statement - 2

# EXHIBIT "A"

EXHIBIT "A"

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

**Anthony O. Egbase (181721)**
**Crystle J. Lindsey (SBN 281944)**
**A.O.E. LAW & ASSOCIATES**
**350 S. Figueroa St., Ste. 189**
**Los Angeles, CA 90071**
**Ph: (213) 620-7070; Fax: (213) 620-1200**
**Email:  info@aoelaw.com**

FOR COURT USE ONLY

☐ *Individual appearing without attorney*
☐ *Attorney for: Debtors and Debtors-in-possession*

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

In re:

Emeterio Rodriguez and Leticia Rodriguez,

Debtor(s).

CASE NO.: 1:17-bk-10881-MT

CHAPTER 13

## DECLARATION OF CURRENT/POSTPETITION INCOME AND EXPENSES

Complete this statement by providing the monthly income of the Debtor and the Debtor's spouse **at this time**. The column labeled "Spouse" must be completed in all cases filed by joint Debtors and by every married debtor, whether or not a joint petition was filed, unless the spouses are separated and a joint petition was not filed.  Do not state the name of any minor child.

| Debtor's Marital Status: | DEPENDENTS OF DEBTORS AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S) | AGE(S) |
| Married | | |
| **Employment:** | DEBTOR | CO-DEBTOR |
| Occupation | Structural Specialist | Self-Employed Seller of Vitamins & Supplements |
| Name of employer | Clark Pacific | |
| How long employed | 30 Years | 4 Years |
| Address of employer | 13592 Slover Ave., Fontana CA 92337 | |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**INCOME:**

|  |  | DEBTOR | SPOUSE |
|---|---|---|---|
| 1. | Monthly gross wages, salary, and commissions (*prorate if not paid monthly*) | $4,962 | $_____ |
| 2. | Estimate monthly overtime | $_____ | $_____ |
| 3. | **SUBTOTAL** | $4,962 | $_____ |
| 4. | **LESS PAYROLL DEDUCTIONS** | | |
|  | a. Payroll taxes and social security | $843 | $_____ |
|  | b. Insurance | $_____ | $_____ |
|  | c. Union dues | $_____ | $_____ |
|  | d. Other (*specify*) _____ | $_____ | $_____ |
| 5. | **SUBTOTAL OF PAYROLL DEDUCTIONS** | $843 | $_____ |
| 6. | **TOTAL NET MONTHLY TAKE HOME PAY** | $4,119 | $_____ |
| 7. | Regular income from operations of business or profession or farm (*attach detailed statement*) | $_____ | $658 |
| 8. | Income from real property | $2,000 | $_____ |
| 9. | Interest and dividends | $_____ | $_____ |
| 10. | Alimony, maintenance or support payments payable to the Debtor for the Debtor's use or that of dependents listed above. | $_____ | $_____ |
| 11. | Social Security or other government assistance (*specify*) _____ | $_____ | $_____ |
| 12. | Pension or retirement income | $_____ | $_____ |
| 13. | Other monthly income (*specify*) _____ | $_____ | $_____ |
| 14. | **SUBTOTAL OF LINES 7 THROUGH 13** | $_____ | $_____ |
| 15. | **MONTHLY INCOME**: (*add amounts shown on lines 6 and 14*) | $6,119 | $_____ |
| 16. | **COMBINED MONTHLY INCOME** (*combine column totals from line 15*) | | $6,777 |

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

_____

**EXPENSES:**

Complete this statement by providing the monthly expenses of the debtor and the debtor's family **at this time**.
Recalculate and state any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐  Check this box if this is a joint case and debtor's spouse maintains a separate household.  Complete a *Declaration of current/Post-Petition Expenses* labeled "Spouse."

1.  Rental Payment (include lot rented for mobile home)                                            $1,650

    a. Are real estate taxes included?        Yes _____        No _____
    b. Is property insurance included?        Yes _____        No _____

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

2. Utilities:  a. Electricity and heating fuel ... $50

b. Water and sewer ... $150

c. Telephone and Internet ... $300

d. Other _____ $_____

3. Home maintenance (repairs and upkeep) ... $_____

4. Food and Household Goods ... $700

5. Clothing ... $_____

6. Laundry and dry cleaning ... $_____

7. Medical and Misc. Work Expenses ... $330

8. Transportation (not including car payments) ... $419

9. Recreation, clubs and entertainment, newspapers, magazines, etc. ... $15

10. Personal Expenses ... $75

11. Insurance (not deducted from wages or included in home mortgage payments)

a. Homeowner's Insurance ... $100

b. Life Insurance ... $95

c. Auto Insurance ... $95

d. Other ... $_____

e. Other _____ $_____

12. Taxes (not deducted from wages or included in home mortgage payments)

(*specify*) _____ $_____

13. Installment payments:

a. Mortgage – Class 5(a) ... $2,070

b. Auto – Class 5(b) ... $289

c. UST Fees ... $108

14. Bank and Postage Fees ... $15

15. Property Taxes ... $300

16. Regular expenses from operation of business, profession, or farm (*attach detailed statement*) ... $_____

17. Other _____ $_____

18. MONTHLY EXPENSES (*total lines 1-17*) ... $6,762

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                     Page 3                     **F 3015-1.20.DEC.INCOME.EXPENSE**

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document: _____

_____

_____

20. STATEMENT OF MONTHLY NET INCOME

      a.  Total monthly income from line 16, page 2.                   $6,777

      b.  Total monthly expenses from Line 18 above             $6,762

      c.  Monthly net income to Pay Unsecured General Claims (a. minus b.)    $15

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: _____

_____
Debtor

Date: _____

_____
Joint Debtor

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                  Page 4            **F 3015-1.20.DEC.INCOME.EXPENSE**

# EXHIBIT "B"

# EXHIBIT "B"

| Fill in this information to identify your case and this filing: | | |
|---|---|---|
| Debtor 1 | **Emeterio Rodriguez** | |
| | First Name                Middle Name                Last Name | |
| Debtor 2 | **Leticia Rodriguez** | |
| (Spouse, if filing) | First Name                Middle Name                Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number | **1:17-bk-10881** | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property (Amended for Net Liquidation Value)

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.
   ☑ Yes. Where is the property?

---

**1.1**

**16585 Montgomery Court**
Street address, if available, or other description

**Fontana**            **CA**    **92336-0000**
City                        State        ZIP Code

**San Bernardino**
County

**What is the property?** Check all that apply

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Single Family Residence**

**Net Liquidation Value = $0**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$375,000.00** | **$375,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☑ Check if this is community property (see instructions)

---

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here**...........................................................=>

**$375,000.00**

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                        Best Case Bankruptcy

| Debtor 1 | **Emeterio Rodriguez** | | |
| Debtor 2 | **Leticia Rodriguez** | Case number *(if known)* | **1:17-bk-10881** |

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

| 3.1 | Make: | **Lincoln** | **Who has an interest in the property?** Check one | | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|---|
| | Model: | **Navigator** | ☐ Debtor 1 only | | |
| | Year: | **2005** | ☐ Debtor 2 only | | |
| | Approximate mileage: | **150,000** | ☑ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | **Current value of the entire property?** | **Current value of the portion you own?** |

**Vehicle paid off, Fair Condition, Vehicle held for Emeterio Rodriguez**
**Location: 13646 Leach Street, San Fernando CA 91340**

**Net Liquidation Value = $0**

☑ Check if this is community property
(see instructions)

**$4,469.00** | **$4,469.00**

| 3.2 | Make: | **MINI** | **Who has an interest in the property?** Check one | | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|---|
| | Model: | **Cooper Countryman** | ☐ Debtor 1 only | | |
| | Year: | **2014** | ☐ Debtor 2 only | | |
| | Approximate mileage: | **52,859** | ☑ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | **Current value of the entire property?** | **Current value of the portion you own?** |

**Good Condition, Vehicle held for daughter Lizbeth Rodriguez**
**Location: 13646 Leach Street, San Fernando CA 91340**

**Net Liquidation Value = $0**

☑ Check if this is community property
(see instructions)

**$15,227.00** | **$15,227.00**

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...........................................................................=>

**$19,696.00**

**Part 3:  Describe Your Personal and  Household Items**

**Do you own or have any legal or equitable interest in any of the following items?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
☑ Yes.  Describe.....

**Miscellanous Household Goods, Furniture, and Appliances**
**Location: 13646 Leach Street, San Fernando CA 91340**

**Net Liquidation Value = $0**

**$1,800.00**

7. **Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
☑ Yes.  Describe.....

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | Emeterio Rodriguez | |
|---|---|---|
| Debtor 2 | Leticia Rodriguez | Case number *(if known)*  1:17-bk-10881 |

> **Televisions and Appliances**
> Location: 13646 Leach Street, San Fernando CA 91340
>
> **Net Liquidation Value = $0**

$700.00

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   - ☑ No
   - ☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   - ☑ No
   - ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    - ☑ No
    - ☐ Yes. Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    - ☐ No
    - ☑ Yes. Describe.....

> **Clothing and Shoes**
> Location: 13646 Leach Street, San Fernando CA 91340
>
> **Net Liquidation Value = $0**

$700.00

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    - ☐ No
    - ☑ Yes. Describe.....

> **Miscellanous Personal Jewelery**
> Location: 13646 Leach Street, San Fernando CA 91340
>
> **Net Liquidation Value = $0**

$500.00

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    - ☑ No
    - ☐ Yes. Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    - ☑ No
    - ☐ Yes. Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...........................................................................

$3,700.00

| Part 4: | Describe Your Financial Assets | |
|---|---|---|
| **Do you own or have any legal or equitable interest in any of the following?** | | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |

| Debtor 1 | **Emeterio Rodriguez** | | |
|---|---|---|---|
| Debtor 2 | **Leticia Rodriguez** | Case number *(if known)* | **1:17-bk-10881** |

**16. Cash**

  *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☑ No
☐ Yes.............................................................................................

**17. Deposits of money**

  *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
  institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes.......................
Institution name:

**General DIP Account**

| | 17.1. | **Checking** | **Net Liquidation Value = $0** | **$2,039.71** |
|---|---|---|---|---|

**Rental DIP Account**

| | 17.2. | **Checking** | **Net Liquidation Value = $0** | **$14,005.00** |
|---|---|---|---|---|

**18. Bonds, mutual funds, or publicly traded stocks**

  *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes.................
Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No
☐ Yes.  Give specific information about them...................
Name of entity:                                            % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

  *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
  *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific information about them
Issuer name:

**21. Retirement or pension accounts**

  *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each account separately.
Type of account:                Institution name:

**22. Security deposits and prepayments**

  Your share of all unused deposits you have made so that you may continue service or use from a company

  *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No
☐ Yes. .....................
Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No
☐ Yes............
Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**

  26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
☐ Yes............
Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**

  *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No
☐ Yes.  Give specific information about them...

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor 1 | **Emeterio Rodriguez** | | |
|---|---|---|---|
| Debtor 2 | **Leticia Rodriguez** | | Case number *(if known)* | **1:17-bk-10881** |

27. **Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
   ☑ No
   ☐ Yes. Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**
   ☑ No
   ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
   ☑ No
   ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
   ☑ No
   ☐ Yes. Give specific information..

31. **Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
   ☐ No
   ☑ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **Life Insurance Term** | | |
| **Net Liquidation Value = $0** | | **$0.00** |

32. **Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
   ☑ No
   ☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
   ☑ No
   ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
   ☑ No
   ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
   ☑ No
   ☐ Yes. Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**................................................................................................................

| $16,044.71 |
|---|

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
   ☑ No. Go to Part 6.
   ☐ Yes.  Go to line 38.

| Debtor 1 | **Emeterio Rodriguez** | | |
|---|---|---|---|
| Debtor 2 | **Leticia Rodriguez** | Case number *(if known)* | **1:17-bk-10881** |

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.
☐ Yes.  Go to line 47.

| **Part 7:** | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |
|---|---|

53.  **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

☑ No
☐ Yes. Give specific information.........

54.   **Add the dollar value of all of your entries from Part 7. Write that number here** ....................................

$0.00

| **Part 8:** | **List the Totals of Each Part of this Form** |
|---|---|

55.   **Part 1: Total real estate, line 2** ................................................................................................
$375,000.00

56.   **Part 2: Total vehicles, line 5**
$19,696.00

57.   **Part 3: Total personal and household items, line 15**
$3,700.00

58.   **Part 4: Total financial assets, line 36**
$16,044.71

59.   **Part 5: Total business-related property, line 45**
$0.00

60.   **Part 6: Total farm- and fishing-related property, line 52**
$0.00

61.   **Part 7: Total other property not listed, line 54**     +
$0.00

62.   **Total personal property.** Add lines 56 through 61...     $39,440.71     Copy personal property total     $39,440.71

63.   **Total of all property on Schedule A/B.** Add line 55 + line 62

$414,440.71

# APPENDIX "I"

# APPENDIX "I"

Home > What's My Car Worth > Style > Options & Condition > Cooper Hatchback 4D



## 2014 MINI Countryman

**Style:** Cooper Hatchback 4D    Change Style

**Mileage:** 55000   Change    Edit Options    Check Specs    Print Report

Have you seen the **2017 model?** Check it out





**our Blue Book® Value**

| Home | Car Values | Cars for Sale | Car Reviews | Awards & Top 10s | Research Tools |

Sign In    91340    0

| Trade In to a Dealer | Get an Instant Cash Offer | Sell to a Private Party |

**Next Steps: Find a Car**

Browse reviews, photos, specs and more.

See what you shou



Private Party Range
**$11,865 - $13,242**
Private Party Value
**$12,462**



ⓘ Important info & definitions

Track this car's values

Valid for ZIP Code 91340 through 12/07/2017

Write a review on your 2014 MINI

| Value based on: | | | |
|---|---|---|---|
| Fair | Good | Very Good | Excellent |

## Sell Your Current Car

Reach millions of buyers on KBB.com and AutoTrader.com

Place an ad

Advertisement

Advertisement

Advertisement

## New Cars You Might Like

    

2016 MINI Paceman    2017 FIAT 500L    2017 MINI Countryman

Advertisement

Advertisement

# Sellers Tools

### Get an Instant Cash Offer
Local dealers are ready to buy your current car

### See Local Prices
(32 Countryman Listings Found)

### Give Buyers Confidence
Show them a clean AutoCheck vehicle history report

### Sell Your Current Car
Reach millions on KBB.com & Autotrader.com

### Refinance Your Car
Compare loan offers from multiple lenders to see if you can lower your monthly payment.



**New Car Price Quote**

**3 Easy Steps!**
**Step 1:** Select a vehicle
**Step 2:** Find a dealer
**Step 3:** Get free quotes

| MINI ▾ | Countryman ▾ |

ZIP Code: 91340    Start

## Popular on KBB.com



**10 Best SUVs Under $25,000 (2016)**



**More Favorites**

- Class of 2017: New Cars Ready to Roll
- 2016-17 Compact SUV Comparison
- Midsize Sedan Buyer's Guide
- Kelley Blue Book Best Buy Awards of 2018



**Search:**  Find car values or features

FAQ  |  Contact Us  |  About Us  |  Careers  |  Corporate  |  Advertising  |  Media  |  Site Map  |  Mobile  |  KBB Portugal  |  KBB Brazil

Follow Us

© 1995-2017 Kelley Blue Book Co.®, Inc. All rights reserved. Copyrights & Trademarks | Terms of Service | Privacy Policy | Linking Policy | Ad Choices

# APPENDIX "II"

# APPENDIX "II"

 

Home    Car Values    Cars for Sale    Car Reviews    Awards & Top 10s    Research Tools     Sign In    91340    0

Home > What's My Car Worth > Options & Condition > Sport Utility 4D

## 2005 Lincoln Navigator

**Style:** Sport Utility 4D

**Mileage:** 150000   Change     Edit Options    Check Specs    Print Report

### Your Blue Book® Value

Have you seen the **2018 model?** Check it out

| Trade In to a Dealer | Get an Instant Cash Offer | Sell to a Private Party |
|---|---|---|

**Next Steps: Find a Car**

Browse reviews, photos, specs and more.

See what you should p



Private Party Range
$4,614 - $6,439
Private Party Value
$4,614

ⓘ Important info & definitions      Track this car's values

Valid for ZIP Code 91340 through 12/07/2017

✎ Write a review on your 2005 Lincoln

| Value based on: | | | |
|---|---|---|---|
| Fair | Good | Very Good | Excellent |

### Sell Your Current Car

Reach millions of buyers on KBB.com and AutoTrader.com

Place an ad

Advertisement

Advertisement

Advertisement

### New Cars You Might Like

    

2017 Lincoln Navigator L     2017 Cadillac Escalade     2017 Cadillac Escalade ESV



## More Shopping Tools

presented by  THE LINCOLN MOTOR COMPANY

### The 2017 Lincoln Navigator

- DISCOVER MORE
- GET OFFERS
- BUILD & PRICE
- SEARCH INVENTORY

Advertisement

Advertisement

## Sellers Tools

### Get an Instant Cash Offer
Local dealers are ready to buy your current car

### See Local Prices
(2 Navigator Listings Found)

### Give Buyers Confidence
Show them a clean AutoCheck vehicle history report

### Sell Your Current Car
Reach millions on KBB.com & Autotrader.com

### Refinance Your Car
Compare loan offers from multiple lenders to see if you can lower your monthly payment.



**New Car Price Quote**

**3 Easy Steps!**
Step 1: Select a vehicle
Step 2: Find a dealer
Step 3: Get free quotes

Lincoln ▾    Navigator ▾

ZIP Code: 91340    Start

## Popular on KBB.com



**10 Best SUVs Under $25,000 (2016)**



**10 Coolest Cars Under $18,000 (2016)**

**More Favorites**

- Class of 2017: New Cars Ready to Roll
- 2016-17 Compact SUV Comparison
- Midsize Sedan Buyer's Guide
- Kelley Blue Book Best Buy Awards of 2018

**Search:**   Find car values or features   🔍

FAQ  |  Contact Us  |  About Us  |  Careers  |  Corporate  |  Advertising  |  Media  |  Site Map  |  Mobile  |  KBB Portugal  |  KBB Brazil

Follow Us 

© 1995-2017 Kelley Blue Book Co.®, Inc. All rights reserved. **Copyrights & Trademarks** | **Terms of Service** | **Privacy Policy** | **Linking Policy** | **Ad Choices**

# EXHIBIT "C"

# EXHIBIT "C"

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Emeterio Rodriguez** |
| | First Name / Middle Name / Last Name |
| Debtor 2 | **Leticia Rodriguez** |
| (Spouse if, filing) | First Name / Middle Name / Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **1:17-bk-10881** |
| (if known) | |

☑ Check if this is an
amended filing

## Official Form 106E/F
## Amended Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

**Part 1:**    List All of Your PRIORITY Unsecured Claims

1.    **Do any creditors have priority unsecured claims against you?**
   ☑ No. Go to Part 2.
   ☐ Yes.

**Part 2:**    List All of Your NONPRIORITY Unsecured Claims

3.    **Do any creditors have nonpriority unsecured claims against you?**
   ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.
   ☑ Yes.

4.    **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

| | | **Total claim** |
|---|---|---|
| **4.1** **BMW Financial Services** | Last 4 digits of account number _____ | **$6,861.50** |
| Nonpriority Creditor's Name | | |
| **P.O Box 3608** | When was the debt incurred? _____ | |
| **Dublin, OH 43016** | | |
| Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply | |

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☑ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  **Auto Loan**

Debtor 1  **Emeterio Rodriguez**

Debtor 2  **Leticia Rodriguez**

Case number (*if know*)    **1:17-bk-10881**

---

| 4.2 | **Designed Receivable Solutions, Inc. /DRS** | Last 4 digits of account number | **7560** | $290.00 |

Nonpriority Creditor's Name

**1 Centerpointe Drive, Suite 450
La Palma, CA 90623**

When was the debt incurred?    **Opened  3/01/15**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- [ ] Debtor 1 only
- [x] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [x] **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- [x] No
- [ ] Yes

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**

- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify    **Collection Attorney Pinnacle Medical Group**

---

| 4.3 | **Nationstar Mortgage LLC** | Last 4 digits of account number | **0809** | $68,954.56 |

Nonpriority Creditor's Name

**8950 Cypress Waters Blvd
Coppell, TX 75019**

When was the debt incurred?

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [x] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [x] **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- [x] No
- [ ] Yes

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**

- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify    **Unsecured portion of bifurcated claim per Stipulation on Value and Plan Treatment**

---

| 4.4 | **Portfolio Recovery Associates LLC** | Last 4 digits of account number | **1921** | $1,520.39 |

Nonpriority Creditor's Name

**Attn: Bankruptcy
P.O Box 41067
Norfolk, VA 23541**

When was the debt incurred?    **Opened  8/01/15  Last Active 6/07/16**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- [ ] Debtor 1 only
- [x] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- [x] No
- [ ] Yes

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**

- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify    **Best Buy Credit Card**

---

Debtor 1   **Emeterio Rodriguez**

Debtor 2   **Leticia Rodriguez**

Case number (if know)   **1:17-bk-10881**

---

| 4.5 | **Quantum 3 Group LLC** | | | | | | $850.71 |

Nonpriority Creditor's Name

Last 4 digits of account number   **0225**

**Wollemi Acquistions LLC**
**PO Box 788**
**Kirkland, WA 98083**

Number Street City State Zip Code

When was the debt incurred?    **Opened  4/01/08  Last Active 7/21/16**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only

☑ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

☑ Other. Specify _____

---

| 4.6 | **Synchrony Bank/Lowes** | | | | | | $743.00 |

Nonpriority Creditor's Name

Last 4 digits of account number   **2417**

**Po Box 965064**
**Orlando, FL 32896**

Number Street City State Zip Code

When was the debt incurred?    **Opened 11/01/14  Last Active 7/20/16**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only

☑ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

☑ Other. Specify   **Charge Account**

---

| 4.7 | **Toyota Motor Credit c/o Becket&Lee** | | | | | | $8,903.39 |

Nonpriority Creditor's Name

Last 4 digits of account number   **6453**

**PO Box 3001**
**Malvern, PA 19355**

Number Street City State Zip Code

When was the debt incurred?    **Opened 12/01/13  Last Active 6/30/16**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☑ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

**2013 Prius 76641 miles**
**Expired lease vehicle returned to Creditor**
**as of 12/2016**

☐ Yes

☑ Other. Specify  **Fair Market**

---

Debtor 1  **Emeterio Rodriguez**

Debtor 2  **Leticia Rodriguez**

Case number (if know)  **1:17-bk-10881**

| 4.8 | **U.S. Dept. of Education c/o Nelnet** | Last 4 digits of account number | **1285** | **$55,590.93** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**121 S. 13th Street**
**Suite 201**
**Lincoln, NE 68508**

When was the debt incurred?  **Opened  6/01/16  Last Active 7/31/16**

Number Street City State ZIp Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☑ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify

**Is the claim subject to offset?**

☑ No
☐ Yes

Student Loans

| 4.9 | **Visa Dept Store National Bank** | Last 4 digits of account number | **2895** | **$551.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 8053**
**Mason, OH 45040**

When was the debt incurred?  **Opened 10/01/15  Last Active 7/30/16**

Number Street City State ZIp Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☑ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  **Charge Account**

**Is the claim subject to offset?**

☑ No
☐ Yes

| 4.10 | **Visa Dept Store National Bank** | Last 4 digits of account number | **3280** | **$6.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 8053**
**Mason, OH 45040**

When was the debt incurred?  **Opened  3/01/15  Last Active 5/24/16**

Number Street City State ZIp Code

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  **Charge Account**

**Is the claim subject to offset?**

☑ No
☐ Yes

---

**Part 3:**  List Others to Be Notified About a Debt That You Already Listed

**5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.**

Name and Address

**Quantum3 Group LLC as agent for**

On which entry in Part 1 or Part 2 did you list the original creditor?

Line **4.5** of (Check one):

☐ Part 1: Creditors with Priority Unsecured Claims

| Debtor 1 | **Emeterio Rodriguez** | | |
|---|---|---|---|
| Debtor 2 | **Leticia Rodriguez** | Case number (if know) | **1:17-bk-10881** |

**MOMA Funding LLC**
**PO Box 788**
**Kirkland, WA 98083-0788**

☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number    **0225**

---

**Part 4:**    Add the Amounts for Each Type of Unsecured Claim

6. **Total the amounts of certain types of unsecured claims.** This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

|  |  |  | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 0.00 |

|  |  |  | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ 55,590.93 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 88,680.55 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ 144,271.48 |

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

# EXHIBIT "D"

# EXHIBIT "D"

Anthony O. Egbase, Esq. (SBN 181721)
Crystle Lindsey, Esq. (SBN: 281944)
A.O.E. LAW & ASSOCIATES | A Professional Law Corporation
350 South Figueroa Street, Suite 189
Los Angeles, California 90071
Tel. (213) 620-7070; Fax. (213) 620-1200
Email:  info@aoelaw.com

Attorney for Debtors and Debtors-in-possession,
Emeterio Rodriguez and Leticia Rodriguez

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| In re | Chapter 11 Case |
|---|---|
| **Emeterio Rodriguez and Leticia Rodriguez,** | Case No. 1:17-bk-10881-MT |
| Debtors. | **CLASS [ ] BALLOT FOR ACCEPTING OR REJECTING DEBTORS' PLAN OF REORGANIZATION** |

### CLASS [  ] BALLOT FOR ACCEPTING OR REJECTING
### PLAN OF REORGANIZATION

    *Emeterio Rodriguez and Leticia Rodriguez* filed a plan of reorganization dated <u>12/06/2017</u> (the "Plan") for the Debtors in this case. The Court has approved a disclosure statement with respect to the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from ***A.O.E. Law & Associates, 350 S. Figueroa Street, Suite 189, Los Angeles, CA 90071, Tel: (213)620-7070*** Court approval of the disclosure statement does not indicate approval of the Plan by the Court.

    **You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your *claim* has been placed in class [ ] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by** A.O.E. Law & Associates, *350 S. Figueroa Street, Suite 189, Los Angeles, CA 90071, Tel: (213)620-7070* **on or before {date to be determined}, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

### ACCEPTANCE OR REJECTION OF THE PLAN

*[At this point the ballot should provide for voting by the particular class of creditors or equity holders receiving the ballot using one of the following alternatives;]*

*[If the voter is the holder of a secured claim:*

The undersigned, the holder of a Class [  ] claim against the Debtor in the unpaid amount of Dollars ($ ) *[or, if the voter is the holder of a bond, debenture, or other debt security:]*

The undersigned, the holder of a Class [        ] claim against the Debtor, consisting of Dollars ($        ) principal amount of [describe bond, debenture, or other debt security] of the Debtor (For purposes of this Ballot, it is not necessary and you should not adjust the principal amount for any accrued or unmatured interest.)

*[or, if the voter is the holder of an equity interest:]*

The undersigned, the holder of Class [       ] equity interest in the Debtor, consisting of _____ shares or other interests of [describe equity interest] in the Debtor

*[In each case, the following language should be included:]*

(Check one box only)

☐ ACCEPTS THE PLAN                    ☐ REJECTS THE PLAN

Dated: _____

Print or type name: _____
Signature: _____
Title (if corporation or partnership) _____
Address: _____
_____
_____

RETURN THIS BALLOT TO:
**A.O.E LAW & ASSOCIATES | A Professional Law Corporation**
**Anthony O. Egbase, Esq.**
**350 South Figueroa Street, Suite 189**
**Los Angeles, California 90071**

2

# EXHIBIT "E"

# EXHIBIT "E"

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Emeterio Rodriguez** | |
| | First Name   Middle Name   Last Name | |
| Debtor 2 | **Leticia Rodriguez** | |
| (Spouse if, filing) | First Name   Middle Name   Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number | **1:17-bk-10881** | |
| (if known) | | |

☐ Check if this is an
amended filing

## Official Form 106G
# Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1.   **Do you have any executory contracts or unexpired leases?**
  ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
  ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2.   **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| | Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|---|
| 2.1 | **Leticia Rodriguez<br>13646 Leach Street<br>San Fernando, CA 91340** | **Residential Lease between Leticia & Emterio Rodriguez (Tenants) and Salvador Rodriguez (Owner) as of 03/01/2017** |
| 2.2 | **Omar Perez<br>16585 Montgomery Ct<br>Fontana, CA 92336** | **Residential Agreement between Omar Perez (Tenant) and Emeterio & Leticia Rodriguez as of 03/01/17** |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# EXHIBIT "F"

# EXHIBIT "F"

# Income & Expenses for Last 6 Months

| | May | June | July | Aug | Sept | Oct | Total | 6 Mo. Average |
|---|---|---|---|---|---|---|---|---|
| **Income** — Monthly totals | $6,528 | $7,003 | $5,927 | $6,317 | $7,473 | $6,282 | $39,530 | $6,777 |
| Rental Proceeds | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $12,000 | $2,000 |
| Emeterio Wages | $3,688 | $4,202 | $3,518 | $4,149 | $5,213 | $3,941 | $24,711 | $4,119 |
| Leticia Herbal Life Bonus | $300 | $261 | $409 | $168 | $260 | $290 | $1,688 | $281 |
| Leticia Herbal Life Receipts | $540 | $540 | - | - | - | $51 | $1,131 | $377 |
| **Expenses** — Monthly totals | $4,261 | $4,300 | $5,240 | $4,640 | $4,553 | $5,348 | $28,342 | $4,724 |
| Rent | $1,650 | $1,650 | $1,650 | $1,650 | $1,650 | $1,650 | $9,900 | $1,650 |
| BMW Car Payment (Mini Cooper) | $394 | $400 | $400 | $400 | $400 | $289 | $2,283 | $381 |
| Work Tools | - | - | - | - | - | $38 | $38 | $38 |
| Utilities (Includes phone, internet and cable) | $914 | $865 | $944 | $637 | $747 | $586 | $4,693 | $782 |
| Food & Household Goods | $674 | $732 | $586 | $876 | $741 | $978 | $4,587 | $765 |
| Medical & Misc. Expenses (Herbal Life) | $193 | $235 | $259 | $235 | $223 | $600 | $1,745 | $291 |
| Personal Expenses | - | $21 | $150 | $22 | $77 | $253 | $523 | $105 |
| Transportation/Gas/Auto Maintenance | $111 | $105 | $699 | $745 | $512 | $333 | $2,505 | $418 |
| Recreation, Clubs, Entertainment | $12 | $12 | $12 | $12 | $12 | $63 | $123 | $21 |
| Auto & Life Insurance | $309 | $181 | $195 | $59 | $187 | $215 | $1,146 | $191 |
| Bank & Postage Fees | $4 | $99 | $20 | $4 | $4 | $18 | $149 | $25 |
| UST Quarterly Fee | - | - | $325 | - | - | $325 | $650 | $325 |
| Net Disposable Income | $2,267 | $2,703 | $687 | $1,677 | $2,920 | $934 | $11,188 | $1,865 |

# EXHIBIT "G"

# EXHIBIT "G"

## Projected Income & Expenses

| Income | Monthly totals | Jan | Feb | March | April | May | June | 6 Mo. Total | Yearly Total |
|---|---|---|---|---|---|---|---|---|---|
| | Rental Proceeds | $6,777 | $6,777 | $6,777 | $6,777 | $6,777 | $6,777 | $40,662 | $6,777 |
| | Emeterio Wages | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $12,000 | $24,000 |
| | Leticia Earnings (Herbal Life) | $4,119 | $4,119 | $4,119 | $4,119 | $4,119 | $4,119 | $24,714 | $49,428 |
| | | $658 | $658 | $658 | $658 | $658 | $658 | $3,948 | $7,896 |
| **Expenses** | Monthly totals | $6,762 | $6,762 | $6,762 | $6,762 | $6,762 | $6,762 | $40,572 | $81,144 |
| | Rent | $1,650 | $1,650 | $1,650 | $1,650 | $1,650 | $1,650 | $9,900 | $19,800 |
| | Property Insurance | $100 | $100 | $100 | $100 | $100 | $100 | $600 | $1,200 |
| | Property Taxes | $300 | $300 | $300 | $300 | $300 | $300 | $1,800 | $3,600 |
| | Utilities (Includes phone, internet and cable) | $500 | $500 | $500 | $500 | $500 | $500 | $3,000 | $6,000 |
| | Food & Household Goods | $700 | $700 | $700 | $700 | $700 | $700 | $4,200 | $8,400 |
| | Medical & Misc. Expenses (Herbal Life & Emeterio's Work Tools) | $330 | $330 | $330 | $330 | $330 | $330 | $1,980 | $3,960 |
| | Personal Expenses | $75 | $75 | $75 | $75 | $75 | $75 | $450 | $900 |
| | Transportation/Gas/Auto Maintenance | $419 | $419 | $419 | $419 | $419 | $419 | $2,514 | $5,028 |
| | Recreation, Clubs, Entertainment | $15 | $15 | $15 | $15 | $15 | $15 | $90 | $180 |
| | Auto & Life Insurance | $191 | $191 | $191 | $191 | $191 | $191 | $1,146 | $2,292 |
| | Bank & Postage Fees | $15 | $15 | $15 | $15 | $15 | $15 | $90 | $180 |
| | UST Quarterly Fee | $108 | $108 | $108 | $108 | $108 | $108 | $648 | $1,296 |
| **Plan Payments** | Real Property Secured Claim - Class 5(a) | $2,070 | $2,070 | $2,070 | $2,070 | $2,070 | $2,070 | $12,420 | $24,840 |
| | Mini Cooper Secured Claim - Class 5(b) | $289 | $289 | $289 | $289 | $289 | $289 | $1,734 | $3,468 |
| | *Net Disposable Income (Class 6(b) Unsecured General Claims)* | $15 | $15 | $15 | $15 | $15 | $15 | $90 | $180 |

# EXHIBIT "H"

EXHIBIT "H"

1  CHRISTOPHER M. MCDERMOTT (SBN 253411)
   cmcdermott@aldridgepite.com
2  TODD S. GARAN (CA SBN 236878)
   tgaran@aldridgepite.com
3  **ALDRIDGE PITE, LLP**
   4375 Jutland Dr., Ste. 200
4  P.O. Box 19734
   San Diego, CA 92177-9734
5  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385
6

7  Attorneys for Secured Creditor:
   Nationstar Mortgage LLC

8

9

10                 **UNITED STATES BANKRUPTCY COURT**

11   **CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION**

12  | In re | Case No.  1:17-bk-10881-MT |
13  | EMETERIO RODRIGUEZ and LETICIA RODRIGUEZ, | Chapter  11 |
14  | | **STIPULATION RE: TREATMENT OF NATIONSTAR MORTGAGE LLC'S CLAIM UNDER DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION** |
15  | Debtors and Debtors in Possession. | |
16  | | **Subject Property** |
17  | | 16585 Montgomery Court Fontana, CA  92336 |
18  | | **Hearing**: |
19  | | Date:      January 18, 2018 |
20  | | Time:      9:30 a.m. |
    | | Rm:        302 |
21  | | 21041 Burbank Blvd. |
    | | Woodland Hills, CA 91364 |
22  | | Judge:     Hon. Maureen Tighe |

23        This Stipulation Re: Treatment of Creditor's Claim ("**Stipulation**") is entered into by and

24  between Secured Creditor, Nationstar Mortgage LLC ("**Creditor**"), and Debtors, Debtors Emererio

25  Rodriquez and Leticia Rodriguez ("**Debtors**"), by and through their respective attorneys of record.

26        The real property which is the subject of this matter is commonly known as 16585

27  Montgomery Court, Fontana, CA  92336 (hereinafter the "**Subject Property**"), which is more fully

28  described in the Deed of Trust attached hereto as Exhibit B and incorporated herein by this

---

Claim Treatment Stipulation.v.1                                    Page - 1 -

1  reference.

2  *Creditor's Claim:*

3     The Loan is evidenced by a promissory note dated May 2, 2008 in the principal sum of

4  $392,000.00 executed by Debtors to Bank of America, N.A. ("**Lender**") (the "**Note**"). A copy of the

5  Note is attached hereto as **Exhibit A** and incorporated herein by this reference.

6     The Note is secured by a deed of trust (the "**Deed of Trust**") encumbering the Subject

7  Property. The Deed of Trust was duly recorded on May 12, 2007, in the Official Records of San

8  Bernardino, State of California. A copy of the Deed of Trust is attached hereto as **Exhibit B** and

9  incorporated herein by this reference. The Note and Deed of Trust may be referred to collectively

10 herein as the "**Loan**."

11    Subsequently, all of Lender's beneficial interest in the Loan was assigned and transferred to

12 Respondent. The Note is endorsed in blank. A cop of the Assignment of Deed of Trust is attached

13 hereto as **Exhibit C** and incorporated by reference.

14 *The Bankruptcy Proceedings:*

15    On April 4, 2017, Debtors filed the instant bankruptcy petition under Chapter 11 of the

16 Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California – San Fernando

17 Valley Division, and were assigned Case No. 1:17-bk-10881-MT.

18    On June 7, 2017, Creditor filed a Proof of Claim against the Debtors' Bankruptcy Estate in

19 the amount of $435,179.87, secured by the Subject Property, with pre-petition arrears in the amount

20 of $29,905.82. A copy of Creditor's Proof of Claim is on file with this Court's Claims Register as

21 Claim No.4.

22    On or about June 30, 2017, Debtor filed the Motion seeking to value the Subject Property.

23 *See, Docket Number 39.*

24    Creditor timely filed an Opposition to the Motion to Value. *See, Docket Numbers 43, 47 and*

25 *59.*

26    The hearing on Debtors' Motion to Value has been continued to January 18, 2018 at 9:30

27 a.m. in the above entitled Court. *See, Docket Numbers 85.*

28 */./.*

Claim Treatment Stipulation.v.1                                          Page - 2 -

*/ / /*

**THE PARTIES STIPULATE AS FOLLOWS**:

     1.    Value of the Subject Property.  The parties agree that the market value of the Subject Property for purposes of these Bankruptcy proceedings only shall be $375,000.00.

     2.    Secured Claim: Creditor (its successors or assigns) shall have a secured claim in the amount of $375,000.00 to be amortized over 30 years at a fixed interest rate of 5.25% per annum (the "**Secured Claim**").

     3.    Unsecured Claim.  Creditor shall have an unsecured claim in the amount of $68,954.56, which includes Creditor's post-petition attorneys' fees and costs associated with Debtors' case to date (the "**Unsecured Claim**").  Creditor shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata share of the dividend issued to general unsecured creditors under Debtors' Chapter 11 Plan, as amended.

     4.    Payments on Secured Claim: Debtor shall tender regular monthly principal and interest payments to Creditor (and/or its servicer) on the Secured Claim in the amount of $2,070.76 on the first day of each month **commencing November 1, 2017** and continuing on the first day of each month thereafter until October 1, 2047 when all outstanding amounts owed on the Secured Claim, including any escrow payments and/or charges as required per the terms and provisions of this Stipulation and/or the Loan, are to be paid in full.

     5.    Payment of Property Taxes and Insurance: Effective immediately, Debtors are required to pay any and all property taxes for the Subject Property when due and obtain and maintain real property insurance for the Subject Property that is also in accordance with any requirements set forth in the Deed of Trust.  Debtors agree to provide Creditor (and/or its servicer) proof of said insurance within 5 business days of executing this Stipulation, and upon reasonable request to verify compliance with this Stipulation.  In the event Debtors fail to timely pay any property taxes or maintain insurance as required hereunder, then Creditor (and/or its servicer) may, in accordance with the Loan documents and applicable non-bankruptcy law, and its sole discretion: 1) pay the property taxes and/or obtain insurance for the Subject Property and thereafter require Debtors to tender monthly escrow payments to reimburse Creditor (and/or its servicer) for any and all real property

taxes and/or insurance advances made by Creditor (and/or its servicer) for the Subject Property; and/or 2) treat any such failure to pay the property taxes when due and/or maintain insurance for the Subject Property as required hereunder a default of this Stipulation.  In the event Creditor (and/or its servicer) requires Debtors to tender escrow payments for property taxes and/or insurance as required hereunder, Debtors shall tender such escrow payments on the first day of each month thereafter along with the regular monthly payment required by paragraph 4 of this Stipulation until the Secured Claim and any outstanding escrow advances are to be paid in full.

6.    <u>Pre-Confirmation Default.</u>    In the event of any default on any of the provisions of this Stipulation prior to confirmation of Debtors' Chapter 11 Plan, Creditor (and/or its servicer) shall provide written notice, via certified mail, to Debtors at the Subject Property and to Debtors' attorney of record, indicating the nature of default.  If Debtors fail to cure the default or payment default with certified funds after the passage of thirty (30) calendar days from the date said written notice is placed in the mail as reflected on the certified receipt, then the Automatic Stay shall terminate, unless it has already been terminated by operation of law, and Creditor (and/or its servicer) may proceed to foreclose its security interest in the Subject Property under the terms of the Loan and applicable state law and thereafter commence any and all action necessary to obtain complete possession of the Subject Property without further notice, order, or proceeding of this Court.  In the event that Creditor is granted relief from the Automatic Stay as set forth herein, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

7.    <u>Post-Confirmation Default</u>.  Upon confirmation of Debtors' Chapter 11 Plan, the Automatic Stay shall be deemed terminated in all respects as to the Debtors and estate vis-à-vis the Creditor, and Creditor (and/or its servicer) will no longer have to comply with notice requirements related to paragraph 6 above.  Instead, Creditor (and/or its servicer) may provide Debtors notice of any default related to the Stipulation in accordance with the Loan, and applicable state law and proceed with all its remedies under the terms of the Loan and applicable state law, including but not limited to foreclosure of the Subject Property, without further notice, order, or proceeding of this Court.

8.    <u>Post-Petition Advances</u>.  Debtors agree that on or before the Effective Date of

Debtors' Plan, Debtors will reimburse Creditor for its post-petition insurance advance for the Subject Property made on May 9, 2017 in the amount of $574.00. Debtors shall send the payment to Creditor's counsel and indicate on the payment that it is reimbursement for post-petition insurance advance.

9.       Any forbearance by Creditor (and/or its servicer) in exercising any right or remedy, including, without limitation, Creditor (and/or its servicer) accepting payments from third persons, entities or successors in interest to Debtors, or in amounts less than the amount due, including as provided for under this Stipulation, shall not be a waiver of or preclude the Creditor's (and/or servicer) exercise of any right or remedy, or act as a waiver of Creditor's right to proceed hereunder or under the Loan.

10.       Except as otherwise expressly provided for herein, all remaining terms of the Note and Deed of Trust, which are incorporated herein by this reference, shall govern the treatment of Creditor's Secured Claim.

11.       Except as expressly provided herein, the Debtors waive any and all claims, causes of action, whether known or unknown, they currently have against Creditor, and its respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan, successors and assigns in relation to the Loan referenced herein and any and all agreements which exist between them regarding or relating to the Loan prior to the date of this Stipulation. This waiver includes Debtors' right to object to Creditor's Claim. The Debtors also releases Creditor and its respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan, successors and assigns from any liability in relation to the Loan prior to the date of this Stipulation.

12.       In the event the Debtors seek to sell the Subject Property at anytime prior to confirming their Chapter 11 Plan, or if Debtors seek to sell the Subject Property through their Chapter 11 Plan, Creditor shall retain the right to credit bid at any such sale in an amount not less than the full pre-confirmation, unmodified original outstanding balance owing under the terms of the Loan and/or exercise any of its rights pursuant to 11 U.S.C. §§ 363(b), (f), (k) or 1129(b)(2)(A)(ii) as applicable, and shall be permitted to receive proceeds from the sale of the Subject Property in an

1   amount not less than the full unmodified, original pre-confirmation outstanding balance owing under

2   the terms of the Loan at said time of sale.

3           13.     In the event the Debtors assert that Creditor has failed to properly update its internal

4   system to comply with the terms of this Stipulation within a reasonable period of time after an order

5   is entered confirming the Debtors' Chapter 11 Plan of Reorganization, which shall be not less than

6   ninety (90) days, the Debtors shall be required to provide written notice of the alleged lack of

7   compliance to Creditor and Creditor's counsel of record, currently, Aldridge Pite, LLP at 4375

8   Jutland Drive, Suite 200, San Diego, CA 92117, indicting the nature of the alleged lack of

9   compliance. If Creditor fails to either remedy the alleged lack of compliance and/or provide an

10   explanation refuting the Debtors' allegation after the passage of ninety (90) days from the date

11   Creditor receives said written notice (the "**Meet and Confer Period**"), Debtors may proceed with

12   filing the appropriate motion in bankruptcy court seeking Creditor's compliance. However, provided

13   Creditor has in good faith sought to remedy Debtors' grievance during the Meet and Confer Period,

14   Debtors shall not request an award of his/her attorneys' fees and costs nor sanctions as a result of

15   filing said motion.

16           14.     Debtors shall be required to attach a copy of this Stipulation and related Order

17   thereon to any Chapter 11 Plan filed in this case as an exhibit, including any modifications or

18   amendments thereto, and the Plan shall expressly and fully incorporate the terms and provisions of

19   this Stipulation by reference into Debtors' Chapter 11 Plan (including any modifications or

20   amendments thereto).  In the event of a conflict between a provision of Debtors' Plan and this

21   Stipulation, the Stipulation shall control.  Further, the terms and provisions of this Stipulation may

22   not be modified, altered, or changed by the Chapter 11 Plan, any subsequently filed amended or

23   modified Chapter 11 Plan of Reorganization and/or confirmation order on the foregoing without the

24   express written consent of the Creditor by way of a subsequent stipulation filed with and approved

25   by the Court.

26           15.     In the event the Debtors' case is dismissed or converted to any other chapter under

27   Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, pre-

28   confirmation unmodified amount due under the Loan, less any payments received to such date, and

the Automatic Stay shall be terminated without further notice, order or proceeding of the Court.

16.    Upon an Order approving this Stipulation, and provided the Debtors' Plan complies with the terms and provisions herein, Creditor shall provide a ballot voting in favor of the Debtors' Chapter 11 Plan of Reorganization for the Secured Claim and Unsecured claim.

17.    The parties agree that the Debtors' Motion to Value [*Docket Number 39*] is hereby resolved by this Stipulation, and upon entry an Order approving this Stipulation, the Continued Hearing currently scheduled for January 18, 2018 at 9:30 a.m. in the above entitled Court may be taken off calendar.  Further, any Order on Debtors' Motion to Value shall be consisting with the value set forth herein.

Dated: _____, 2017          AOE LAW & ASSOCIATES

                                      By: _____
                                           Anthony O. Egbase
                                           Crystle J. Lindsey
                                           Attorney for Debtors

Dated: 12/1, 2017                     ALDRIDGE PITE, LLP

                                      By: _____
                                           Todd S. Garan
                                           Attorneys for Creditor

Claim Treatment Stipulation.v.1                                    Page - 7 -

1   the Automatic Stay shall be terminated without further notice, order or proceeding of the Court.

2        16.    Upon an Order approving this Stipulation, and provided the Debtors' Plan complies

3   with the terms and provisions herein, Creditor shall provide a ballot voting in favor of the Debtors'

4   Chapter 11 Plan of Reorganization for the Secured Claim and Unsecured claim.

5        17.    The parties agree that the Debtors' Motion to Value [*Docket Number 39*] is hereby

6   resolved by this Stipulation, and upon entry an Order approving this Stipulation, the Continued

7   Hearing currently scheduled for January 18, 2018 at 9:30 a.m. in the above entitled Court may be

8   taken off calendar.  Further, any Order on Debtors' Motion to Value shall be consisting with the

9   value set forth herein.

11   Dated: _December 1_ , 2017       AOE LAW & ASSOCIATES

13                             By: _Crystle J. Lindsey_

                                    Anthony O Egbase
                                    Crystle J. Lindsey
                                    Attorney for Debtors

16   Dated: _____ , 2017       ALDRIDGE PITE, LLP

17                             By: _____

18                                      Todd S. Garan
                                      Attorneys for Creditor

# EXHIBIT A

Copy

# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

MAY 02, 2008                      FONTANA                                    CA
    [Date]                                [City]                              [State]
16585 MONTGOMERY COURT, FONTANA, CA 92336

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 392,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.000 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. Interest will be calculated on a 360 DAY basis.

## 3. PAYMENTS

*(Please check box for interest-only payments.)*

[X] Beginning on the FIRST day of JULY, 2008 and on the FIRST day of every month thereafter until the FIRST day of JULY, 2018 , I will pay only the interest on the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the FIRST day of each month beginning on JULY 01, 2008

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 01, 2038 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at BANK OF AMERICA, N.A., P.O. BOX 535318, ATLANTA, GEORGIA 30353-5318
or at a different place if required by the Note Holder.

**MULTISTATE ADJUSTABLE RATE NOTE** – Single Family

Page 1 of 6

BS899N (0706)                      Wolters Kluwer Financial Services
MGN1 05/05/08 11:39 AM 6361869404



Copy



**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $            1,960.00            . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the  FIRST                 day of  JUNE, 2013                         , and on that day every     12TH           month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:
THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL. THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND ONE-QUARTER                       percentage points (            2.250        %) to the Current Index. The Note Holder will then round the result of this addition to the  ☐ Nearest  ☒ Next Highest  ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT        (        0.125        %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

☒ The "Interest-Only Period" is the period from the date of this Note through  JUNE 01, 2018           . For the Interest-Only Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the Interest-Only Period. For the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

*(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)*

☐ **(1)**  There will be no maximum limit on interest rate changes.

BS899N (0706)
MGN3 05/05/08 11:39 AM 6361869404                     Page 2 of 6

**EXHIBIT A**

(2) The interest rate I am required to pay at the first Change Date will not be greater than _____ % or less than _____ %.

(3) My interest rate will never be increased or decreased on any single Change Date by more than _____ percentage points ( _____ %) from the rate of interest I have been paying for the preceding period.

[X] (4) My interest rate will never be greater than _____ 11.000 _____ %, which is called the "Maximum Rate."

(5) My interest rate will never be less than _____ %, which is called the "Minimum Rate."

(6) My interest rate will never be less than the initial interest rate.

[X] (7) The interest rate I am required to pay at the first Change Date will not be greater than _____ 11.000 _____ % or less than _____ 2.250 _____ %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO _____ percentage points ( _____ 2.000 _____ %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENTS WITHOUT PAYING A PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THE NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATE OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES. IF THE PARTIAL PREPAYMENT IS MADE DURING THE PERIOD WHEN MY MONTHLY PAYMENTS CONSIST ONLY OF INTEREST, THE AMOUNT OF THE MONTHLY PAYMENT WILL DECREASE FOR THE REMAINDER OF THE TERM WHEN MY PAYMENTS CONSIST ONLY OF INTEREST. IF THE PARTIAL PREPAYMENT IS MADE DURING THE PERIOD WHEN MY PAYMENTS CONSIST OF PRINCIPAL AND INTEREST, MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY MONTHLY PAYMENTS AFTER THE FIRST CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. HOWEVER, ANY REDUCTION DUE TO MY PARTIAL PREPAYMENT MAY BE OFFSET BY AN INTEREST RATE INCREASE.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**EXHIBIT A**

Copy



## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of          15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The
amount of the charge will be          5.0                    % of my overdue payment of principal and interest. I will
pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue
amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which
has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on
which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as
described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have
the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited
by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be
given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different
address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing
it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am
given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the
promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor,
surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,
including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the
promises made in this Note. The Note Holder may enforce its rights under this Note against each person
individually or against all of us together. This means that any one of us may be required to pay all of the amounts
owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of
Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice
of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not
been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from
possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument
describes how and under what conditions I may be required to make immediate payment in full of all amounts I
owe under this Note. Some of those conditions are described as follows:

(A) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION
4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(B) BELOW SHALL THEN CEASE TO BE IN
EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**EXHIBIT A**



Copy

 

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. AS USED IN THIS SECTION 18, "INTEREST IN THE PROPERTY" MEANS ANY LEGAL OR BENEFICIAL INTEREST IN THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THOSE BENEFICIAL INTERESTS TRANSFERRED IN A BOND FOR DEED, CONTRACT FOR DEED, INSTALLMENT SALES CONTRACT OR ESCROW AGREEMENT, THE INTENT OF WHICH IS THE TRANSFER OF TITLE BY BORROWER AT A FUTURE DATE TO A PURCHASER.

IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT, LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. HOWEVER, THIS OPTION SHALL NOT BE EXERCISED BY LENDER IF EXERCISE IS PROHIBITED BY APPLICABLE LAW.

IF LENDER EXERCISES THIS OPTION, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION. THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN IN ACCORDANCE WITH SECTION 15 WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THIS PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER NOTICE OR DEMAND ON BORROWER.

**EXHIBIT A**

Copy

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Emeterio Rodares_____ (Seal)
EMETERIO RODRIGUEZ                                      -Borrower

_Leticia Rodriguez_____ (Seal)
LETICIA RODRIGUEZ                                       -Borrower

_____ (Seal)
                                                       -Borrower

                              PAY TO THE ORDER OF       (Seal)
_____  -Borrower

                           WITHOUT RECOURSE
                              Bank of America, N.A.     (Seal)
_____  -Borrower
                         BY _Christina M Schmitt_
                            CHRISTINA M. SCHMITT
                            ASSISTANT VICE PRESIDENT    (Seal)
_____  -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

                                        (Sign Original Only)

BS899N (0706)                    Page 6 of 6
    MGN2 05/05/08 11:39 AM 6361869404

**EXHIBIT A**

# EXHIBIT B

Copy

RECORDING REQUESTED BY:
FIRST AMERICAN TITLE COMPANY
SUBDIVISION DEPARTMENT

Recording Requested By:
BANK OF AMERICA

Return To:

JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256

Electronically Recorded in Official Records, County of San Bernardino    5/12/2008 01:04 PM



**LARRY WALKER**
Auditor/Controller - Recorder

828 First American Title - Rancho

| | Titles: | 1 | Pages: **23** |
|---|---|---|---|
| | Fees | | 77.00 |
| | Taxes | | .00 |
| | Other | | .00 |
| | PAID | | 77.00 |



[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   MAY 02, 2008                 ,
together with all Riders to this document.
**(B) "Borrower"** is EMETERIO RODRIGUEZ AND LETICIA RODRIGUEZ

Borrower's address is   7843 CITRUS AVE, FONTANA, CA  92336

. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of   THE UNITED STATES OF AMERICA            .

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 1 of 15                                    Form 3005 1/01

BS6(CA)  (0711)              Wolters Kluwer Financial Services
   CVCA 05/05/08 11:39 AM

**EXHIBIT B**

Copy

Lender's address is 275 S.VALENCIA AVE. 1ST FLOOR, BREA, CA 928236340

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is PRLAP, INC.

**(E) "Note"** means the promissory note signed by Borrower and dated MAY 02, 2008
The Note states that Borrower owes Lender THREE HUNDRED NINETY TWO THOUSAND AND
00/100                                                                                      Dollars
(U.S. $      392,000.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JUNE 01, 2038                 .
**(F) "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or
authorize a financial institution to debit or credit an account. Such term includes, but is not
limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01
BS6(CA) (0711)                                   Page 2 of 15              Initials: E.R.
CVCA 05/05/08 11:3█                                                                 J.R.

**EXHIBIT B**

Copy

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                    of  SAN BERNARDINO                    :

        [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

"SEE ATTACHED EXHIBIT A."

Parcel ID Number: 0241-041-77-0-000,0241-041-76-0-000          which currently has the address of
16585 MONTGOMERY COURT                                          [Street]
FONTANA                                        [City] , California 92336     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by

---

**CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3005 1/01
**BS6(CA)** (0711)                      Page 3 of 15            Initials: *E.R*
    CVCA 05/05/08 11:3                                              *J-R*

**EXHIBIT B**

Copy

the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any

EXHIBIT B

Copy

time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

---

**CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
BS6(CA)   (0711)                              Page 5 of 15                   Initials: E·R
CVCA 05/05/08 11:3█                                                          J·R.

**EXHIBIT B**

Copy

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
BS6(CA)   (0711)
CVCA 05/05/08 11:3█                Page 8 of 15                Initials: E. K.
J - R.

**EXHIBIT B**

Copy

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**EXHIBIT B**

Copy

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3005 1/01
**BS6(CA)**  (0711)                                          Page 8 of 15          Initials: E. R.

CVCA 05/05/08  11:39   ▮▮▮▮▮                                                        J. R.

**EXHIBIT B**

Copy

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

**CALIFORNIA − Single Family − Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
**BS6(CA)**  (0711)   Page 9 of 15   Initials: _E.R._

CVCA 05/05/08 11:

_J.R._

**EXHIBIT B**

Copy

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected

**CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01
BS6(CA)   (0711)   Page 10 of 15   Initials: _E. R._

CVCA 05/05/08 11:39 AM

_J. R._

**EXHIBIT B**

Copy

from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums

**CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
**BS6(CA)** (0711)                                     Page 11 of 15            Initials: E·R

CVCA 05/05/08 11:39 AM

J·R.

**EXHIBIT B**

Copy

which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
**BS6(CA)** (0711)
CVCA 05/05/08 11:39 AM
Page 12 of 15      Initials: *E.R*
*J.R.*

**EXHIBIT B**

Copy

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
BS6(CA)  (0711)
CVCA 05/05/08 11:39 AM    Page 13 of 15    Initials: E.R
                                                          J.R.

**EXHIBIT B**

and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     *Emeterio Rodrigez* _____ (Seal)
                                     EMETERIO RODRIGUEZ              -Borrower


_____     *Leticia Rodrigez* _____ (Seal)
                                     LETICIA RODRIGUEZ              -Borrower


                    _____ (Seal)        _____ (Seal)
                              -Borrower                     -Borrower


                    _____ (Seal)        _____ (Seal)
                              -Borrower                     -Borrower


                    _____ (Seal)        _____ (Seal)
                              -Borrower                     -Borrower


CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
BS6(CA)  (0711)                                    Page 14 of 15
    CVCA 05/05/08 11:3█████████████

**EXHIBIT B**

Copy

State of California
County of San Bernardino } ss.

On 5/5/08 before me, Karla Valdivia notary public
, personally appeared

Emeterio Rodriguez & Leticia Rodriguez

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I
certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.



KARLA VALDIVIA
Commission # 1538796
Notary Public - California
San Bernardino County
My Comm. Expires Dec 26, 2008

Karla Valdivia                    (Seal)

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01
BS6(CA)  (0711)
CVCA 05/05/08 11:                Page 15 of 15           Initials: E.R
                                                                   J.R.

**EXHIBIT B**

Copy

# EXHIBIT "A"



**LEGAL DESCRIPTION**

Real property in the City of Fontana, County of San Bernardino, State of California, described as follows:

LOT 11 OF TRACT NO. 16494, IN THE CITY OF FONTANA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 327, PAGE 4 TO 6 OF MAPS, RECORDS OF SAID COUNTY.

*First American Title*

**EXHIBIT B**

Copy

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this   2ND    day of  MAY,  2008        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note")
to  BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:  16585 MONTGOMERY COURT,  FONTANA,  CA   92336

(Property Address)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE
INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN
THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of          6.000           %. The Note
provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the  FIRST day of  JUNE, 2013
, and on that day every   12TH      month thereafter. Each date on which my
interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is:

---

**MULTISTATE ADJUSTABLE RATE RIDER** – Single Family     MGNR 05/05/08 11:39
Page 1 of 6
BS899R (0402)        VMP Mortgage Solutions, Inc. (800)521-7291

**EXHIBIT B**

Copy

THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL.  THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND ONE-QUARTER                      percentage points (    2.250        %) to the Current Index. The Note Holder will then round the result of this addition to the ☐ Nearest  ☒ Next Highest ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT      (    0.125      %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### ☒ Interest-Only Period

The "Interest-only Period" is the period from the date of this Note through JUNE 01 , 2018        . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**EXHIBIT B**

Copy

**(D) Limits on Interest Rate Changes**
**( Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes .)**

☐ (1) There will be no maximum limit on interest rate changes.

☐ (2) The interest rate I am required to pay at the first Change Date will not be greater than                % or less than                %.

☐ (3) My interest rate will never be increased or decreased on any single Change Date by more than                percentage points (                %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than 11.000                %, which is called the "Maximum Rate."

☐ (5) My interest rate will never be less than                %, which is called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than        11.000        % or less than        2.250        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO                percentage points (        2.000        %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BS899R (0402)                    Page 3 of 6        MGNR 05/05/08 11:39 AM

**EXHIBIT B**

Copy

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:
(1) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE
INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM
COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B(2)
BELOW SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF
THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in
this Section 18, "Interest in the Property" means any legal or beneficial interest
in the Property, including, but not limited to, those beneficial interests
transferred in a bond for deed, contract for deed, installment sales contract or
escrow agreement, the intent of which is the transfer of the title by Borrower
at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or
transferred (or if a Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent, Lender
may require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if such
exercise is prohibited by Applicable Law. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required
by Lender to evaluate the intended transferee as if a new loan were being made
to the transferee; and (b) Lender reasonably determines that Lender's security
will not be impaired by the loan assumption and that the risk of a breach of any
covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable
fee as a condition to Lender's consent to the loan assumption. Lender also may
require the transferee to sign an assumption agreement that is acceptable to
Lender and that obligates the transferee to keep all the promises and
agreements made in the Note and in this Security Instrument. Borrower will
continue to be obligated under the Note and this Security Instrument unless
Lender releases Borrower in writing.

**BS899R (0402)**          Page 4 of 6          MGNR 05/05/08 11:39

**EXHIBIT B**

Copy

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(2) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. AS USED IN THIS SECTION 18, "INTEREST IN THE PROPERTY" MEANS ANY LEGAL OR BENEFICIAL INTEREST IN THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THOSE BENEFICIAL INTERESTS TRANSFERRED IN A BOND FOR DEED, CONTRACT FOR DEED, INSTALLMENT SALES CONTRACT OR ESCROW AGREEMENT, THE INTENT OF WHICH IS THE TRANSFER OF TITLE BY BORROWER AT A FUTURE DATE TO A PURCHASER.

IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT, LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. HOWEVER, THIS OPTION SHALL NOT BE EXERCISED BY LENDER IF EXERCISE IS PROHIBITED BY APPLICABLE LAW.

IF LENDER EXERCISES THIS OPTION, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION. THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN IN ACCORDANCE WITH SECTION 15 WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THIS PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER NOTICE OR DEMAND ON BORROWER.

**EXHIBIT B**

Copy

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Emeterio Rodriguez_ _____ (Seal)
EMETERIO RODRIGUEZ                        −Borrower

_Leticia Rodriguez_ _____ (Seal)
LETICIA RODRIGUEZ                         −Borrower

_____ (Seal)
                                          −Borrower

_____ (Seal)
                                          −Borrower

_____ (Seal)
                                          −Borrower

_____ (Seal)
                                          −Borrower

_____ (Seal)
                                          −Borrower

_____ (Seal)
                                          −Borrower

**BS899R** (0402)            Page 6 of 6        MGNR 05/05/08 11:39

**EXHIBIT B**

Copy

## ACKNOWLEDGMENT

State of California
County of ___San Bernardino___ )

On ___5/5/08_____ before me, ___Karla Valdivia, notary Public___
(insert name and title of the officer)

personally appeared ___Emeterio and Leticia Rodriguez_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

KARLA VALDIVIA
Commission # 1638796
Notary Public - California
San Bernardino County
My Comm. Expires Dec 26, 2009

Signature ___Karla Valdivia___    (Seal)

**EXHIBIT B**

# EXHIBIT C

Copy

Recorded In Official Records, County of San Bernardino

8/07/2013
12:37 PM
CG

**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

**C Priority Mail**

| | Titles: 1 | Pages: 1 |
|---|---|---|
| Fees | | 18.00 |
| Taxes | | 0.00 |
| Other | | 0.00 |
| PAID | | $18.00 |

Recording Requested By:
**Bank of America, N.A.**
Prepared By: Noor Sadruddin
16001 N. Dallas Pkwy
Addison, TX 75001

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
Westlake, TX 76262-9823

7/31/2013

Property Address:
**16585 MONTGOMERY CT**
**FONTANA, CA 92336**

6/11/2013

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **NATIONSTAR MORTGAGE, LLC** whose address is **350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:           BANK OF AMERICA, N.A.
Original Borrower(s):   EMETERIO RODRIGUEZ AND LETICIA RODRIGUEZ
Original Trustee:          PRLAP, INC.
Date of Deed of Trust:  5/2/2008
Original Loan Amount:  $392,000.00

Recorded in San Bernardino County, CA on: 5/12/2008, book N/A, page N/A and instrument number **2008-0213655**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
7-11-13

Bank of America, N.A.

By:  _Ana P Tamez-Ellis_
     Ana P Tamez-Ellis
     ASSISTANT VICE PRESIDENT

State of **TX**, County of **DALLAS**

On ___JUL 1 1 2013___, before me, ___ROGER JOSEPH JACOB JR___, a Notary Public, personally appeared ___Ana P Tamez-Ellis___     ___ASSISTANT VICE PRESIDENT___     of Bank of America, N.A. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Roger J Jacob Jr_

Notary Public: ROGER JOSEPH JACOB JR
My Commission Expires: OCT 04 2014

ROGER JOSEPH JACOB, JR.
Notary Public, State of Texas
My Commission Expires
10/04/2014

**EXHIBIT**

# EXHIBIT "I"

# EXHIBIT "I"

BRET D. ALLEN
CALIFORNIA STATE BAR #300192
LAW OFFICE OF BRET D. ALLEN
1105 E. MAIN STREET STE 205
ALLEN, TX 75002
TELEPHONE: (214) 347-9006
FACSIMILE: (214) 347-9006
BRET@BRETALLEN.COM

ATTORNEY FOR CREDITOR
BMW BANK OF NORTH AMERICA

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA (RIVERSIDE)

| | |
|---|---|
| In Re: | Case No. 1:17-bk-10881-MT |
| EMETERIO RODRIGUEZ AND LIZBETH A RODRIGUEZ / LETICIA RODRIGUEZ | (Chapter 11 Proceeding) |
| | **STIPULATION ON MOTION TO DETERMINE VALUATION OF 2014 MINI COOPER COUNTRYMAN 2D I4** |
| | (THIS STIPULATION RESOLVES **DOCKET #49**) |
| Debtor(s). | Judge: Maureen A. Tighe |
| | Ctrm: 302 |

_____/

BMW Bank of North America (the "Creditor"), who is the current holder of a Motor

Vehicle Installment Contract and Security Agreement which is secured by a 2014 MINI

Cooper Countryman 2D i4, VIN # WMWZC3C58EWP26519 ("Collateral") and Debtors have

agreed to the following terms to resolve the Objection to Motion to Value filed by Creditor.

**IT IS THEREFORE STIPULATED TO AND ORDERED THAT:**

1.    The Collateral is valued at $15,227.50.

2.    Creditor will have a secured claim of $15,227.50 amortized over five years
      at

1

1    5.25% interest rate.

2        3.    Creditor reserves its rights as to any unsecured claim that Creditor may be
3    entitled to under the Bankruptcy Code and Rules.

4    AGREED TO AND APPROVED BY:

5

6    */s/ Bret D. Allen*

7    **BRET D. ALLEN**                CLARISSA D CU  *CRYSTLE J. LINDSEY*
     State Bar No. 24080762           State Bar No. 281944
8    ALLEN LAW FIRM                   AOE LAW & ASSOCIATES APC
     1105 E. Main Street Ste 205      350 S Figueroa St Ste 189
9    Allen, TX 75002                  Los Angeles, CA 90071
     (214) 347-9006                   (213) 620-7070
10   (214) 347-9006 (fax)             (213) 620-1200 (fax)
11   bret@bretallen.com               clarissa@aoelaw.com  *crystle@aoelaw.com*

12   ATTORNEY FOR BMW BANK OF         ATTORNEY FOR DEBTORS
     NORTH AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| BRET D. ALLEN, ESQ<br>CALIFORNIA BAR NO. 300192<br>LAW OFFICE OF BRET D. ALLEN<br>1105 E. MAIN STREET STE 205<br>ALLEN, TX 75002<br>(O) 214-347-9006<br>(F) 214-347-9006<br>BRET@BRETALLEN.COM<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | **FILED & ENTERED**<br><br>**SEP 15 2017**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY Cetulio    DEPUTY CLERK |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

</div>

| In re:<br><br>EMETERIO RODRIGUEZ AND<br><br>LIZBETH A RODRIGUEZ /<br><br>LETICIA RODRIGUEZ<br><br><div align="right">Debtor(s).</div> | CASE NO.: 1:17-bk-10881-MT<br><br>CHAPTER:11<br><br>**ORDER APPROVING STIPULATION RE: STIPULATION ON MOTION TO DETERMINE VALUATION OF 2014 MINI COOPER COUNTRYMAN 2D i4 UNDER 11 U.S.C. § 362** |
|---|---|

**Movant:** BMW BANK OF NORTH AMERICA

**The Property at Issue (Property):**

    Vehicle (year, manufacturer, type, and model): 2014 MINI Cooper Countryman 2D i4
    Vehicle Identification Number: WMWZC3C5 8EWP265l9

IT IS HEREBY ORDERED THAT the Stipulation filed on September 11,2017, Docket Entry No. 66 is

hereby approved.

    ###

Date: September 15, 2017

                                      Maureen A. Tighe
                                      United States Bankruptcy Judge